# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-cr-60109-ALTMAN

**UNITED STATES OF AMERICA**,

v.

**SHANNEY STOKES**,

    *Defendant*.

_____/

## ORDER

The Defendant, Shanney Stokes, stands accused of "maliciously damag[ing] and destroy[ing], by means of fire and an explosive," a Dodge Ram that had been leased to a City of Miami police detective, in violation of 18 U.S.C. § 844(f)(1). Indictment [ECF No. 3] at 1. Stokes moves to dismiss the Indictment, arguing that § 844(f)(1) is unconstitutional as applied to him. *See* Motion to Dismiss Indictment ("Motion") [ECF No. 19] at 1.[1] After careful review, we **DENY** the Motion.

### THE LAW

"A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b)." *United States v. Arregoces Barros*, 2022 WL 1135707, at *2 (S.D. Fla. Apr. 18, 2022) (Bloom, J.). Under Rule 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). "[A] defendant may challenge an indictment on a variety of [ ] grounds, including for failure to state an offense, lack of jurisdiction, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct." *United States v. Kaley*, 677 F.3d 1316, 1326 (11th Cir. 2012). "[A]n indictment may be dismissed where there is an infirmity of law in the prosecution[.]" *United States v. Torkington*, 812 F.2d

---

[1] The Motion is fully briefed and ripe for adjudication. *See* Government's Response in Opposition to Motion to Dismiss the Indictment ("Response") [ECF No. 23]; Reply to Response in Opposition to Motion to Dismiss Indictment ("Reply") [ECF No. 24].

1347, 1354 (11th Cir. 1987). But "a court may not dismiss an indictment . . . on a determination of facts that should have developed at trial." *Ibid.* Instead, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).

## ANALYSIS

The Government alleges that, on the morning of November 25, 2022, Stokes used an improvised incendiary device (a plastic water bottle filled with gasoline) to ignite a Dodge Ram 1500 that "was rented by the City of Miami Police Department and assigned to B.W., a City of Miami Police Detective." Response at 1. This conduct, the Government says, violates federal law, which makes it illegal for a person to "maliciously damage[ ] or destroy[ ], or attempt[ ] to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, *or any institution or organization receiving Federal financial assistance*[.]" 18 U.S.C. § 844(f)(1) (emphasis added). Since the Government claims that the Dodge Ram was "a vehicle possessed by and leased to an institution and organization receiving Federal financial assistance," Indictment at 1, its theory of the case is that Stokes violated § 844(f)(1) when he burned it, *see* Response at 8 ("[A]pplication [of § 844(f)(1)] is proper if the damaged property—including a vehicle—is owned, possessed by, or leased to an entity that receives federal funds.").

Stokes contends that the Government reads § 844(f)(1) too broadly. Although Stokes doesn't dispute that the City of Miami Police Department is an "institution and/or organization receiving federal financial assistance," he notes that the rental vehicle "was not paid [for] with federal funds[.]" Motion at 1–2. And, according to Stokes (with an assist from the First Circuit), § 844(f)(1) only applies to property that's "owned or possessed *using federal financial assistance*"—not (contra the Government's view) to "*all property* of any organization 'receiving federal financial assistance.'" *Id.* at 2–3 (emphases added & quoting *United States v. Hersom*, 588 F.3d 60, 67 (1st Cir. 2009)). Stokes warns us that, if we

adopt the Government's reading of § 844(f)(1), then Assistant U.S. Attorneys "would be able to prosecute someone lighting a fire inside a wastepaper basket at the City of Miami Police Department, unhoused individuals lighting fires in a local park, and basically any fire involving property of a state or local government or a private institution or organization that received financial assistance." *Id.* at 3–4. The Government responds that both Stokes and the First Circuit "disregard[ ] the explicit language of the statute and adopt[ ] a reading that runs afoul of congressional intent." Response at 10.

"The starting point for statutory interpretation is the language of the statute. 'The 'cardinal canon' of statutory interpretation is that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023) (quoting *United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009)). We must "give effect to every clause and every word of a statute, so that no clause or word is superfluous, void, or insignificant." *Ibid.* If the language of the statute is unambiguous, "we need look no further and our inquiry ends." *Ga. State Conf. of the NAACP v. City of LaGrange, Ga.*, 940 F.3d 627, 631 (11th Cir. 2019).

We agree with the Government that § 844(f)(1)'s "language is clear and unambiguous." Response at 8. The statute plainly criminalizes the use of fire or explosives to damage or destroy property that is "owned or possessed by or leased to" one of three entities: (1) "the United States," (2) "any department or agency thereof," or (3) "any institution or organization receiving Federal financial assistance." § 844(f)(1). The term "Federal financial assistance" thus modifies "any institution or organization"—not "any building, vehicle, or other personal or real property[.]" *Ibid.* This case therefore requires us to determine whether *the owner* (or lessee) of the damaged property received federal funding—not whether *the property itself* was acquired with federal funds. To hold otherwise would add words to the statute that simply aren't there—something we aren't allowed to do. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) ("It is a fundamental principle of statutory interpretation that 'absent provisions cannot be supplied by the courts.' To do so 'is not a construction

3

of a statute, but, in effect, an enlargement of it by the court.'" (first quoting A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 94 (2012); and then quoting *Nichols v. United States*, 578 U.S. 104, 110 (2016))).

And we aren't alone in reading § 844(f)(1) this way. As far as we can tell, for the last *fifty years*, every federal court in the country (besides the First Circuit) has read § 844(f)(1) the same way. *See United States v. Apodaca*, 522 F.2d 568, 572 (10th Cir. 1975) ("Relying upon the fact that the destroyed patrol car was purchased for the Fremont County sheriff's office out of its operating budget . . . and not with any of the federal funds in issue . . . appellant contends there is no federal jurisdiction because 18 U.S.C. § 844(f) applies only to the specific items purchased with the federal funds. We cannot agree. The clear and unambiguous language of the statute provides that it applies to any property owned, possessed, used by or leased to any organization receiving federal financial assistance."); *United States v. Laton*, 352 F.3d 286, 296 n.9 (6th Cir. 2003) ("The arson of a building owned by the federal government or an entity receiving federal assistance . . . can be [prosecuted] under § 844(f)."); *United States v. York*, 600 F.3d 347, 353–54 (5th Cir. 2010) ("Phyllis Ann Griffin, a county agent for the Texas Agrilife Extension Service, testified that it was her office window that was, in her words, 'bomb[ed]' and that her employer receives federal funding. . . . Given that these institutions or organizations receive federal financial assistance, or are a federal agency or department, and possess a part of the damaged building, the Government has put on legally sufficient evidence of the federal nexus." (alteration in original)); *United States v. Pittman*, 600 F. Supp. 3d 597, 599 (E.D.N.C. 2022) ("Here, the unambiguous language of the statute contemplates the malicious damage or destruction of 'any building . . . in whole or in part owned or possessed by . . . any institution or organization receiving federal financial assistance.' Thus, if an organizational owner of any building receives federal funds, and that building is damaged by fire and/or an explosive, the perpetrator of the damage may be subject to the penalties in 18 U.S.C. § 844(f)(1).").

4

As we've suggested, only one federal circuit court has ever gone the other way, *see Hersom*, 588 F.3d at 66 ("We conclude that, in general, the statute should be limited to arson of property acquired, renovated, or leased using federal financial assistance.")—and, naturally, Stokes asks us to "follow [this] persuasive, well-reasoned opinion," Motion at 5. But *Hersom* is far from well-reasoned. In fact, it got quite a lot wrong. *Hersom* gave two reasons for its holding. *One*, it found "no legislative history suggesting that Congress intended section 844(f) to cover all property owned, possessed, or leased by institutions receiving federal financial assistance[.]" *Hersom*, 588 F.3d at 66. As we're about to explain, that's just an antiquated method of statutory interpretation that, frankly, few (if any) courts would take seriously today. *Two*, it determined that "Congress intended the scope of the statute to be co-extensive with its authority under the Property Clause," and that "applying section 844(f) to all property of any organization 'receiving Federal financial assistance' would give the statute a sweeping scope" that would render it unconstitutional under the Property Clause. *Id.* at 67. We're not persuaded by either of the First Circuit's concerns.

*First*, we agree with the Government that the First Circuit erred by relying on the statute's legislative history. On this issue, the Supreme Court has been pellucid: "[L]egislative history can *never* defeat unambiguous statutory text[.]" *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1750 (2020) (emphasis added); *cf. Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc) ("When the import of the words Congress has used is clear, as it is here, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language."). As we've explained, the statute, by its own unambiguous terms, applies to property that's "owned or possessed by or leased to" (as relevant here) "any institution or organization receiving Federal financial assistance." § 844(f)(1). It thus plainly doesn't require the Government to prove that the property *itself* was bought with federal funds—and every federal court to have passed on this question has found this interpretation of the law unassailable. Even the First Circuit, in fact, *never suggested* that § 844(f)(1)

was in any way ambiguous. If anything, the *Hersom* opinion suggests the opposite. *See Hersom*, 588 F.3d at 65 ("[T]he term 'Federal financial assistance' generally refers to entities receiving federal funds—directly or indirectly—so long as they are the intended recipients of the federal legislation providing the assistance. We see no reason why section 844(f) should be interpreted differently."). That should have been the end of the matter. Since § 844(f)(1)'s text is clear, the statute's legislative history is *completely* irrelevant to our analysis. *See Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) ("There are, we recognize, contrary indications in the statute's legislative history. But we do not resort to legislative history to cloud a statutory text that is clear.").[2] And the First Circuit was wrong to rely on it.

*Second*, we disagree with the First Circuit's conclusion that § 844(f)(1) would be unconstitutional if it "cover[s] all property owned by [any institution or organization receiving Federal financial assistance]." *Hersom*, 588 F.3d at 67. On this point, the First Circuit distilled its reasoning into three easy steps: (1) "Congress intended the scope of the statute to be co-extensive with its authority under the Property Clause," *id.* at 66; but (2) the Property Clause doesn't allow Congress to regulate third parties "unless [their] conduct at least *relates* to [federal property]," *ibid.*; so (3) the court was "obligated to construe the statute to avoid constitutional questions that would be presented by a broad construction," *id.* at 67 (citing *Jones v. United States*, 529 U.S. 848, 857 (2000)).

This (again) is not how statutory interpretation works. Much like the use of legislative history, "[t]he canon of constitutional avoidance comes into play only when, *after the application of ordinary textual analysis*, the statute is found to be susceptible of more than one construction; and the canon functions

---

[2] For that same reason, we reject out of hand the First Circuit's invocation of the rule of lenity. *See Hersom*, 588 F.3d at 67 ("The doctrine of lenity, requiring criminal statutes to be construed narrowly, also suggests a narrowing construction."). "That rule applies only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (quoting *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998)). Without any such ambiguity (much less "grievous" ambiguity) here, the rule of lenity is simply inapposite.

as *a means of choosing between them.*" *Clark v. Martinez*, 543 U.S. 371, 385 (2005) (first emphasis added). But, when a statute (like § 844(f)(1)) has *only one* unambiguous meaning, the constitutional avoidance canon simply doesn't apply. *See Warger v. Shauers*, 574 U.S. 40, 50 (2014) ("Given the clarity of both the text and history of Rule 606(b), however, the canon of constitutional avoidance has no role to play here. The canon is a tool for choosing between competing plausible interpretations of a provision. It has no application in the absence of ambiguity. We see none here." (cleaned up)). We cannot follow the First Circuit's repeated application of unnecessary canons of construction that muddle—rather than clarify—§ 844(f)(1)'s unambiguous text.

Having thus addressed (and rejected) the two justifications the First Circuit gave for its holding, we now agree with the Government that (contra Stokes's position) *Hersom* is *not* a "persuasive, well-reasoned opinion[.]" Motion at 5. Still, we'll take a moment to explain why, constitutional canons aside, the First Circuit was wrong to skip over two *other* constitutional provisions that plainly authorize Congress to do precisely what it did in § 844(f)(1). The Constitution grants Congress the "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States[.]" U.S. CONST., art. IV, § 3, cl. 2. While the Property Clause gives Congress the "plenary power to dispose of public lands," *Ruddy v. Rossi*, 248 U.S. 104, 106 (1918), it also allows Congress to regulate *private property* so long as that regulation facilitates the protection or maintenance of federally-owned property, *see United States v. Alford*, 274 U.S. 264, 267 (1927) ("Congress may prohibit the doing of acts upon privately owned lands that imperil the publicly owned forests."); *see also High Point, LLLP v. Nat'l Park Serv.*, 850 F.3d 1185, 1199 & n.14 (11th Cir. 2017) (explaining that Congress has "the constitutional power" to "regulate activities on non-federal public waters in order to protect wildlife and visitors on federal lands" (quoting *United States v. Brown*, 552 F.2d 817, 821–22 (8th Cir. 1977))).

We understand why the First Circuit (and at least two other district courts) determined that § 844(f)(1) would violate the Property Clause if it criminalized the arson of *all property* possessed by an organization that receives federal funding. *See United States v. Brown*, 384 F. Supp. 1151, 1157–58 (E.D. Mich. 1974) ("To expand the applicability of the Property Clause into far-reaching areas so as to include the property of recipients of all federal funds controverts the original intent of the Property Clause and goes far beyond any previous judicial interpretation."), *rev'd on other grounds*, 557 F.2d 541 (6th Cir. 1977); *see also United States v. Lung'aho*, 2022 WL 10716767, at *2 (E.D. Ark. Oct. 18, 2022) ("As applied to Lung'aho, [§ 844(f)(1)] cannot be sustained under the Property Clause. The damaged police cars were not federal property. They were not paid for with federal financial assistance, either directly or indirectly. The Congress's property power does not extend to criminalizing arson of property having no federal aspect."), *aff'd on other grounds*, 72 F.4th 845 (8th Cir. 2023).

But just because § 844(f)(1) *might* be unconstitutional under the Property Clause doesn't mean that we must limit its scope (as the First Circuit did) "to arson of property acquired, renovated, or leased using federal financial assistance." *Hersom*, 588 F.3d at 66. That's because § 844(f)(1) is *still* constitutional—just under a different provision. The district courts in *Brown* and *Lung'aho*, after all, ultimately upheld § 844(f)(1)'s constitutionality under the Spending and Necessary and Proper Clauses, explaining that Congress has an interest in protecting organizations that provide services "in furtherance of an announced national goal." *Brown*, 384 F. Supp. at 1159;[3] *see also id.* at 1160 ("Congress must have the means to protect those institutions it is currently funding to carry out federal programs if those programs are to be economically or expeditiously carried out. It should not have to create a

---

[3] The Sixth Circuit explicitly affirmed and adopted the district court's finding that § 844(f)(1) was a constitutional exercise of Congress's power under the Spending and Necessary and Proper Clauses, so we consider the district court's order in *Brown* to have the persuasive weight of a published out-of-circuit opinion. *See Brown*, 557 F.2d at 559 ("The final issue raised by Appellant is the constitutionality of 18 U.S.C. § 844(f), malicious destruction by means of an explosion of an institution receiving federal financial assistance. We affirm the constitutionality of § 844(f) as applied to the Planned Parenthood Association for the reasons stated in the District Court's opinion.").

8

federal instrumentality in each instance but should be able to use existing instrumentalities. . . . While actively using and funding such instrumentalities Congress should be able to protect them with criminal sanctions from destruction or loss by direct, violent action, i.e., the use of explosives. Section 844(f) is not unconstitutional."); *Lung'aho*, 2022 WL 10716767, at *2 ("Under the Spending Clause, Congress has the power to send federal resources to state and local agencies such as police departments to provide for the general welfare, and it has the right to protect those resources from being destroyed by fire or explosives.").

The Necessary and Proper Clause grants Congress "broad power to enact laws that are 'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise.'" *United States v. Comstock*, 560 U.S. 126, 133–34 (2010) (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 413, 418 (1819)). And Congress has the power under the Spending Clause to ensure that the recipients of its funds can use them "in the manner Congress intended." *Nat'l Fed'n of Ind. Bus. v. Sebelius*, 567 U.S. 519, 576 (2012) (citing U.S. CONST., art. I, § 8, cl. 1); *see also Brown*, 384 F. Supp. at 1160 ("Congress must have the means to protect those institutions it is currently funding to carry out federal programs if those programs are to be economically or expeditiously carried out."). Congress, in short, had the power *both* to fund the City of Miami Police Department *and* to ensure the success of that police department's mission by punishing anyone who burned the department's vehicles.[4]

In saying so, we find *Lung'aho*'s analogy to 18 U.S.C. § 666—a statute "which criminalizes bribery connected to programs that receive federal funds," *Lung'aho*, 2022 WL 10716767, at *2— persuasive. The Supreme Court has held that § 666 "does not require the Government to prove federal funds were involved in the bribery transaction" or even that "the bribe in question had any particular influence on federal funds[.]" *Salinas v. United States*, 522 U.S. 52, 60–61 (1997). And the Eleventh

---

[4] *Hersom* breezes past all this, saying only in passing that "[t]he application of the Necessary and Proper Clause adds little to the analysis." 588 F.3d at 67.

9

Circuit has said that § 666 constituted a permissible exercise of Congress's power under the Necessary and Proper and Spending Clauses because Congress "must be assured that the instrumentalities through which the federal government pursues comprehensive aims can be trusted to apply appropriated funds toward their intended objectives." *United States v. Edgar*, 304 F.3d 1320, 1327 (11th Cir. 2002); *accord United States v. Sabri*, 326 F.3d 937, 951 (8th Cir. 2003) ("Section 666 could have been more narrowly crafted . . . for example, by criminalizing the theft of the federal funds themselves while in the hands of the recipient, or by requiring a direct nexus between the offense conduct and a federal program, but 'the Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality to perform its function.' . . . Thus, to suggest that corruption involving a discrete department or section of an agency that does not itself receive federal funds or administer a federal program can have no effect on the integrity or efficacy of a federal program is to ignore the fact that money is fungible and that federal funds are often comingled with funds from other sources. Section 666 addresses this problem by policing the integrity of the entire organization that receives federal benefits." (quoting *Yakus v. United States*, 321 U.S. 414, 425 (1944))).[5]

Just as Congress has a valid interest in ensuring that it isn't funding corrupt organizations, Congress has an equally "substantial interest" in protecting the recipients of its funding (like law

---

[5] We acknowledge that there's a distinction to be drawn between money—which is fungible—and cars, which aren't. But the fungibility of money wasn't central to the holdings in *Salinas* and *Edgar*. Instead, those courts seemed to emphasize—as *Brown* and *Lung'aho* would later do in the context of § 844(f)(1) *specifically*—Congress's compelling interest in "[being] assured that the instrumentalities through which the federal government pursues comprehensive aims can be trusted to apply appropriated funds toward their intended objectives." *Edgar*, 304 F.3d at 1327. As we've said, Congress has the power under the Spending Clause to ensure that the recipients of its funds can use them "in the manner Congress intended." *Sebelius*, 567 U.S. at 576 (citing U.S. CONST., art. I, § 8, cl. 1). And, if a police department's vehicles are being destroyed by someone like Stokes, then the department may be forced to use federal funds to replace vehicles that otherwise wouldn't have needed replacing—creating a kind of chain reaction of dollar shortages that could dilute the efficacy of the federal appropriation. Congress has a powerful interest in preventing this domino effect from diminishing the value of its grants. *See Brown*, 384 F. Supp. at 1160 ("Congress must have the means to protect those institutions it is currently funding to carry out federal programs if those programs are to be economically or expeditiously carried out.").

enforcement agencies) so that they can "provide for the general welfare[.]" *Lung'aho*, 2022 WL 10716767, at *2; *see also United States v. Montgomery*, 2023 WL 2298714, at *18 (W.D. Pa. Mar. 1, 2023) (Hornak, C.J.) ("[C]onsistent with Congress's authority under the Property Clause as it may be implemented via the Necessary and Proper and Spending Clauses, Congress may broadly establish criminal penalties for individuals who damage or destroy by arson, fire, or explosives property owned or possessed by, or leased to, entities receiving federal financial assistance.").[6]

Against all this, Stokes and the First Circuit advance one final argument: If we adopt the majority view of § 844(f)(1), they say, the statute will take on a "sweeping scope" that "would transform a broad swathe of 'traditionally local criminal conduct' into a 'matter of federal enforcement.'" *Hersom*, 588 F.3d at 67 (quoting *Jones*, 529 U.S. at 858); *see also* Motion at 3–4 ("The federal government would be able to prosecute someone lighting a fire inside a wastepaper basket, . . . unhoused individuals lighting fires in a local park, and basically *any* fire involving property of a state or local government or a private institution or organization that received financial assistance."); Reply at 2 ("This unrestrained reading of the federal arson statute would sweep an entire population of the unhoused setting bonfires in a municipal park to stay warm into the clutches of the federal arson statute[.]"). We see no reason to be so alarmed. For one thing, *Hersom*'s hysteria aside, the Undersigned has been a federal judge for almost five years. In all that time, we have never seen (or heard of) this statute being applied to *anyone* (until now)—this, despite the fact that federal courts around the country have, for fifty years, repeatedly upheld the statute's constitutionality (as we do here). For another, the statute only applies where the defendant acts "maliciously." § 844(f)(1). In other words, the defendant must have "acted intentionally or with willful disregard for the likelihood that damage would result."

---

[6] Even the First Circuit agrees that § 844(f) "should be construed to apply in some limited instances to non-federally funded property where federal interests are implicated[.]" *Hersom*, 588 F.3d at 67. And we think the federal government has a compelling interest in ensuring that the operations of the police departments it funds aren't impeded by arson or fire.

11

*United States v. Gullett*, 75 F.3d 941, 947 (4th Cir. 1996); *see also United States v. Morrison*, 218 F. App'x 933, 940–41 (11th Cir. 2007) (explaining that 18 U.S.C. § 844(i), which carries a similar malicious-intent element, requires the Government to prove that the act was "done 'intentionally or with willful disregard of the likelihood that damage or injury would result'" (quoting *United States v. Wiktor*, 146 F.3d 815, 818 (10th Cir. 1998))). This intent requirement thus prevents the federal government from turning accidental fire-starters and homeless men and women trying to stay warm in winter into federal felons. "More importantly, [Stokes] is not accused of setting a trash can on fire. He's accused of destroying [a police car]. The arson statute is constitutional as applied to him." *Lung'aho*, 2022 WL 10716767, at *3.[7]

\*     \*     \*

After careful review, we hereby **ORDER and ADJUDGE** that the Defendant's Motion to Dismiss [ECF No. 19] is **DENIED**.

---

[7] Stokes says that the Government's reading of § 844(f)(1) "conjures up their recent failure at the Supreme Court to expand the use of [18 U.S.C.] § 1028A." Reply at 1 (citing *Dubin v. United States*, 143 S. Ct. 1557, 1572 (2023)). This comparison is inapt. The Court in *Dubin* found that the Government's reading of § 1028A was so expansive and so broad that it would "apply automatically any time a name or other means of identification happens to be part of the payment or billing method used in the commission of a long list of predicate offenses. In other words, virtually all of the time." 143 S. Ct. at 1564–65; *id.* at 1574 (Gorsuch, J., concurring) ("Whoever among you is not an 'aggravated identity thief,' let him cast the first stone. The United States came to this Court with a view of 18 U.S.C. § 1028A(a)(1) that would affix that unfortunate label on almost every adult American. Every bill splitter who has overcharged a friend using a mobile-payment service like Venmo. Every contractor who has rounded up his billed time by even a few minutes. Every college hopeful who has overstated his involvement in the high school glee club. All of those individuals, the United States says, engage in conduct that can invite a mandatory 2-year stint in federal prison."). Our reading of § 844(f)(1), by contrast, is *far narrower*. For starters, § 844(f)(1) *specifically* enumerates the kinds of property that fall within the statute's reach. And—contra the Government's argument in *Dubin*—our interpretation of § 844(f)(1) requires the Government to prove that a defendant acted with "malicious" intent.

**DONE AND ORDERED** in the Southern District of Florida on October 4, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record